# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

NATIONAL LABOR RELATIONS BOARD
SUBREGION 24
      Applicant

v.

CAPITOL TRANSPORTATION, INC.
      Respondent

Civil Case No. 17 - MC - 044 (PG)

*RECEIVED & FILED*
*2017 JAN 31 PM 2:37*
*CLERK'S OFFICE*
*U.S. DISTRICT COURT*
*SAN JUAN, P.R.*

## APPLICATION FOR ORDER ENFORCING
## SUBPOENA *DUCES TECUM*

The National Labor Relations Board (herein the Board), an administrative agency of

the Federal Government, applies to this Court for an order compelling compliance with two

subpoena *duces tecum* that the Board issued and served on Respondent Capitol

Transportation, Inc. (herein the Respondent). This Application is made under Section 11(2)

of the National Labor Relations Act, as amended (29 U.S.C. §151 et seq.) (herein the Act). In

support of this Application, the Board states as follows:

1.      The Board is an administrative agency of the United States created by the Act, 29

U.S.C. §151, et seq., and is empowered and directed to administer the provisions of the Act,

including the power to investigate allegations of unfair labor practices as defined in Section 8

of the Act, 29 U.S.C. §158, and to issue complaints and hold administrative hearings as

provided in Section 10 of the Act, 29 U.S.C. §160.

2.      This Court has jurisdiction of the subject matter of the proceeding and of Respondent

by virtue of Section 11(2) of the Act (29 U.S.C. 161(2)). The subpoenas were issued within

this judicial district against Respondent, a corporation that is engaged in the business of

assisting individuals and businesses in the process of moving or relocating within the

Commonwealth of Puerto Rico. The Respondent's postal address is P O Box 363008 San Juan, PR 00936-3008.

3.      This application arises as the result of impending investigations of several unfair labor practice charges filed by Unión de Tronquistas de Puerto Rico, Local 901, IBT (the Union), and individuals Arcadio Vinas and Elias Torres, in Cases 12-CA-180495, 12-CA-181123, 12-CA-183368, 12-CA-183746, 12-CA-185281, 12-CA-187845 and 12-CA-188221. The charges in Cases 12-CA-180495, 12-CA-181123, 12-CA-183368, 12-CA-183746, allege that Respondent violated the Act by engaging in the following conduct: (a) since in or about July 2016, failing to bargain in good faith with the Union by subcontracting unit work and/or assigning unit work to employees that are not part of the unit without bargaining with the Union and in violation of the terms of the extant collective-bargaining agreement; (b) since in or about July 2016, temporarily laying-off unit employees while maintaining subcontracted and/or non-unit employees working, without bargaining with the Union and in violation of the terms of the extant collective bargaining agreement; (c) changing the terms and conditions of employment of unit employees without bargaining with the Union by unilaterally discontinuing the use of paystubs and by failing to timely deposit unit employees' and Employer's contributions to the savings plan, in violation of the terms of the extant collective-bargaining agreement and/or past practice; (d) on or about August 31, 2016, discriminating against unit employee and shop steward Luis Lleras by laying him off in violation of the collective-bargaining agreement and of his seniority rights. The Union alleges that Respondent further engaged in bad faith bargaining by failing to bargain with the Union over this decision and its effects; and that (e) since in or about September 2016, Respondent has discriminated against Luis Lleras by suspending him for 30 days because of his union

activities and/or protected concerted activities. The Union further alleges that Respondent engaged in bad faith bargaining by refusing to notify and bargain with the Union over the imposition of this suspension. The charges in Cases 12-CA-185281, 12-CA-187845, 12-CA-188221, allege that Respondent violated the Act by engaging in the following conduct: (a) since in or about August 2016, failing and refusing to bargain collectively and in good faith with the Union by refusing to meet and bargain a successor collective-bargaining agreement; (b) in or about November 2016, discriminating against employees Luis Lleras, Arcadio Viñas and Elias Torres by discharging them because of their Union activities and in order to discourage Union activities and/or membership; and (c) in or about November 2016, discriminating against employees Luis Lleras and Arcadio Viñas by discharging them because they filed charges, provided evidence and/or gave testimony to the Board. The charges, copy of which are attached hereto as **Exhibits A through G** were prepared, filed and served consistent with the requirements of Section 10(b) of the Act and of 29 C.F.R. Sections 102.9, 102.10, 102.15 and 102.20 of the Board's Rules and Regulations.  These Rules and Regulations have been issued pursuant to Section 6 of the Act (29 U.S.C. §156) and have been published in the Federal Register (24 F.R. 9095), pursuant to the Administrative Procedure Act (5 U.S.C. §552). See 29 C.F.R. 102. This Court may take judicial notice of the Board's Rules and Regulations under 44 U.S.C. 1507.

4.      After unsuccessfully seeking Respondent's cooperation in providing evidence sought in the investigation of the unfair labor practice charges in Cases 12-CA-180495, 12-CA-181123, 12-CA-183368, and 12-CA-183746, and in order to obtain information that is relevant to the matter under investigation, and therefore, necessary for determining the merits of the charge, on October 25, 2016, the National Labor Relations Board issued and served

Subpoena *Duces Tecum* B-1-U0OPPH on Respondent (herein Subpoena A), returnable on

November 9, 2016, a copy of which is attached hereto as **Exhibit H**, directing it to produce

certain records more fully described as follows:

1. Copy of the most recent version of the collective-bargaining agreement applicable to unit employees, signed by both the Union and the Employer, and including all agreements and/or stipulations between the Employer and the Union to extend the term of the most recent collective-bargaining agreement.

2. From January 1, 2016 to the return date of this subpoena, all communications, including but not limited to, letters, emails, text messages, social media messages, meeting minutes, memos, notes, and memoranda, between the Employer and the Union that mention, relate to or concern the Employer's contribution to unit employees' savings plan.

3. From January 1, 2016 to the return date of this subpoena, all communications, including but not limited to, letters, emails, text messages, social media messages, meeting minutes, memos, notes, and memoranda, between the Employer and the Union that mention, relate to or concern unit employees' paystubs.

4. From January 1, 2016 to the return date of this subpoena, all communications, including but not limited to, letters, emails, text messages, social media messages, meeting minutes, memos, notes, and memoranda, between the Employer and the Union that mention, relate to or concern the subject of subcontracting unit work and/or assigning unit work to employees outside the unit.

5. From January 1, 2016 to the return date of this subpoena, all communications, including but not limited to, letters, emails, text messages, social media messages, meeting minutes, memos, notes, and memoranda, between the Employer and the Union that mention, relate to or concern the layoffs of unit employees.

6. From August 1, 2015 to the return date of this subpoena, paystubs, payroll records, and all documents that demonstrate the amount of money retained by the Employer from the salary of each unit employee in connection to the savings plan on a weekly basis, or as the Employer customarily pays its employees.

7. From August 1, 2015 to the return date of this subpoena, cancelled checks and all documents that demonstrate the date and amount of money paid and deposited by the Employer to each unit employees' savings plan on a

weekly basis, or as the Employer customarily pays its employees (including the deposit of employees' contributions as well as the deposit of the Employer's contribution, if any).

8. From August 1, 2015 to the return date of this subpoena, all communications, including but not limited to, letters, emails, text messages, social media messages, meeting minutes, memos, notes, and memoranda, between the Employer and the savings plan administrators that mention, relate to, or concern the Employer's contribution to the savings plan of its unit employees.

9. From January 1, 2016 to the return date of this subpoena, all paystubs distributed to unit employees on a weekly basis or as the Employer customarily pays its unit employees.

10. From January 1, 2016 to the return date of this subpoena, all communications, including but not limited to, letters, emails, text messages, meeting minutes, memos, notes, and memoranda, between any of the Employer's directors, managers, supervisors, or agents regarding the subcontracting of unit work and/or the assignment of unit work to employees outside the unit.

11. From January 1, 2016 to the return date of this subpoena, all communications, including but not limited to, letters, emails, text messages, meeting minutes, memos, notes, and memoranda, between any of the Employer's directors, managers, supervisors, or agents regarding the decision to layoff unit employees.

12. Name and employment contract of all non-unit employees (including but not limited to subcontracted employees, if any) who worked for the Employer at any time between August 1, 2015 and the return date of this subpoena and who performed work customarily assigned to unit employees, including job description and title, date of hire, and contract with the employment agency, if any.

13. From August 1, 2015 to the return date of this subpoena, all layoff letters distributed by the Employer to any of its unit employees.

14. Copy of all documents that the Employer relied upon to lay-off any of its employees from the period from August 1, 2015 to the return date of this subpoena (described in item #13 above).

15. From August 1, 2015 to the return date of this subpoena, all layoff letters distributed by the Employer to non-unit employees (including but not limited to subcontracted employees, if any) who performed work customarily assigned to unit employees.

16. From January 1, 2016 to the return date of this subpoena, all documents, (including but not limited to payroll records) that reflect the number of regular and overtime hours worked by unit employees on a daily basis. For those employees that did not work on a particular day specify whether or not they were on leave or layoff status on said day.

17. From January 1, 2016 to the return date of this subpoena, payroll records of all non-unit employees (including but not limited to subcontracted employees, if any) who performed work customarily assigned to unit employees, reflecting the number of regular and overtime hours worked on a daily basis. For those employees that did not work on a particular day specify whether or not they were on leave or layoff status on said day.

18. For the period from January 1, 2016 to the return date of this subpoena, all documents that reflect the names of the employees (unit, non-unit, and subcontracted employees) who performed unit work on those dates when one or more unit employee was in layoff status, including the name of the project they were assigned to work at, the specific tasks they were assigned to perform, and the number of hours they spent on each task.

19. Complete personnel file of Luis Lleras, excluding HIPAA protected documents, and including all disciplinary actions issued during his tenure with the Employer.

20. Copy of all employee manuals, handbooks, policies, and rules of conduct in effect from August 1, 2015 to the return date of this subpoena.

21. Any notes taken by the Employer documenting the incident that led to its decision to suspend Luis Lleras in or about September 2016.

22. All documents the Employer relied upon to suspend Luis Lleras in or about September 2016 including but not limited to any complaints received from any of the Employer's customers.

23. From January 1, 2014 to the return date of this subpoena, name and complete personnel file, excluding HIPAA protected documents, of all employees who were disciplined for the same or similar reasons that lead to Luis Llera's suspension in September 2016, including copy of the disciplinary actions.

24. From January 1, 2014 to the return date of this subpoena, name and complete personnel file, excluding HIPPA protected documents, of all employees who were suspended for 30 days or more, including copy of the disciplinary action.

25. An alphabetized list of the Employer's employees as of the date of this subpoena with their starting date of employment.

5.      After unsuccessfully seeking Respondent's cooperation in providing evidence sought in the investigation of the unfair labor practice charges in Cases 12-CA-185281, 12-CA-187845 and 12-CA-188221, and in order to obtain information that is relevant to the matter under investigation, and therefore, necessary for determining the merits of the charge, on December 27, 2016, the National Labor Relations Board issued and served Subpoena *Duces Tecum* B-1-UT4NFF on Respondent (herein Subpoena B), returnable on January 9, 2016, a copy of which is attached hereto as **Exhibit I**, directing it to produce certain records more fully described as follows:

1. For the period from January 1, 2016 to the return date of this subpoena, all letters, emails, text messages, social media messages, meeting minutes, memos, notes, proposals, counterproposals, and memos, and other documents that show communications between the Employer and the Union that mention, relate to or concern bargaining, meeting to bargain a successor collective-bargaining agreement, and/or members of the bargaining committees.

2. Copies of the termination letters that the Employer distributed to unit employees Arcadio Viñas and Elias Torres in or about November 2016.

3. The complete personnel files of unit employees Arcadio Viñas, and Elias Torres, including all disciplinary actions issued during their tenure with the Employer.

4. All employee manuals, handbooks, policies, and rules of conduct applicable to unit employees during the period from August 1, 2015 to the return date of this subpoena, and documents showing the dates that they were in effect.

5. All documents, including but not limited to letters, emails, text messages, social media messages, meeting minutes, memos, notes, reports, summaries, statements and memos, that mention, relate to, or concern the incident that led to its decision to terminate the employment of Luis Lleras, Arcadio Viñas, and Elias Torres in or about November 2016.

6. All documents the Employer relied upon to terminate the employment of Luis Lleras, Arcadio Viñas, and Elias Torres in or about November 2016.

7. All documents showing communications, including but not limited to, letters, emails, text messages, social media messages, meeting minutes, memos, notes, reports, summaries, statements and memos, between and/or among the Employer's directors, managers, supervisors, or agents that mention, relate to, or concern the Employer's deliberations that led to the termination of employment of Luis Lleras, Arcadio Viñas, and Elias Torres, and/or the Employer's decision to terminate the employment of Luis Lleras, Arcadio Viñas, and Elias Torres in or about November 2016.

8. All documents showing communications between the Employer and the Union that mention, relate to or concern the decision to terminate unit employees Luis Lleras, Arcadio Viñas, and Elias Torres in or about November 2016, including but not limited to, letters, emails, text messages, social media messages, meeting minutes, memos, notes, and memos.

9. For the period from January 1, 2014 to the return date of this subpoena, the names and complete personnel file of all employees who were disciplined for the same or similar reasons as Luis Lleras, Arcadio Viñas, and Elias Torres were discharged, including copies of all such disciplinary actions.

10. The names and complete personnel files of all employees who were involved in the incident that resulted in the Employer's determination to discharge Luis Lleras, Arcadio Viñas, and Elias Torres in or about November 2016, including copies of any disciplinary actions that were issued to those employees as a result of said incident.

11. For the project that that took place in Jayuya, Puerto Rico from on or about October 24, 2016 to on or about October 27, 2016, copies of the work orders, work instructions, attendance sheets, and any other documents that reflect the names of the employees assigned to work at the project, the hours they worked, and all instructions given by the Employer with regard to said project.

12. For the project that that took place in Jayuya, Puerto Rico from on or about October 24, 2016 to on or about October 27, 2016, any documents that client Jesus Martes (or any of his representatives or family members) signed or submitted to the Employer that mention, relate to, or concern the work performed by the employees assigned to work at said project.

6.     Section 11(1) of the Act and Section 102.31(a) of the Board's Rules and Regulations authorize the Board, in furtherance of the broad Congressional purpose of promoting the free

flow of commerce, to issue to any person subpoenas requiring the production of any evidence that "relates to any matter under investigation or in question."

7.      The subpoenas described above in paragraph 4 and 5 are consistent with the requirements of Section 11(1) of the Act and Section 102.31(a) of the Board's Rules and Regulations and were properly served on Respondent by addressing and sending them by certified mail to its postal address: P O Box 363008 San Juan, PR 00936-3008.  Respondent acknowledged receipt of both Subpoenas.  Service and receipt of the Subpoenas complied with Section 11(4) of the Act and Section 102.113 of the Board's Rules and Regulations.  29 C.F.R. 102.113.  A copy of the return post office receipt for Subpoena A is attached hereto as **Exhibit J**, and a copy of the return post office receipt for Subpoena B is attached hereto as **Exhibit K**.

8.      Section 11 (1) of the Act and Section 102.31 (b) of the Rules provide for a period of 5 days after service of a subpoena within which any person served may petition the Board to revoke the subpoena. Respondent did not file any petition to revoke the subpoenas described in paragraph 4 and 5 above.

9.      Subsequent to the issuance of Subpoena A, Respondent was requested to produce the subpoenaed documents by no later than November 16, 2016, via e-mail message dated November 10, 2016. Respondent replied on November 11, 2016, stating that it intended to comply with the Subpoena A, but was not sure if he would be able to completely comply by the November 16 deadline.

10.     Since Respondent had not produced any of the requested documents, another e-mail message was sent on November 21, 2016, requesting compliance with Subpoena A by no later than November 25, 2016. Respondent replied by e-mail message on November 23, 2016,

9

requesting an extension until November 28, 2016, to produce the documents, which was granted.

11.     On November 28, 2016, Respondent produced a series of documents in connection with Subpoena A, which were not labeled or organized by subpoena paragraph, and which did not contain many of the documents requested pursuant to Subpoena A.

12.     Since Respondent failed to comply with a substantial part of the production of documents requested pursuant to Subpoena A, on December 7, 2016, Respondent was advised, via email, of the insufficiency of its November 26, 2016 production of documents, and was granted until December 12, 2016 to produce all documents requested pursuant to Subpoena A and to clarify the extent of its production.  Respondent failed to respond to the Sub Region's communication. A copy of the email communications referred above in paragraphs 9 through 12, including the letter a dated December 7, 2016 requesting Respondent's clarification, are attached hereto as **Exhibit L and M, respectively**.

13.     Subsequent to the issuance of Subpoena B, Respondent contacted the Regional Office, acknowledged receipt of the same, and stated that although it intended to comply, it would need additional time.

14.     Respondent was requested to produce the documents requested by Subpoenas A and B by no later than January 25, 2017, via email message dated January 19, 2017. Respondent failed to respond to the Sub Region's communication or to produce any of the requested documents by the January 25 deadline.

15.     Respondent was contacted once again by email message dated January 27, 2017, requesting compliance with both Subpoenas by no later than January 30, 2017. Respondent did not reply to the email communication or produced any of the requested documents by the

January 30, 2017 deadline. Copy of the email communications referred above in paragraphs 14 and 15 are attached hereto as **Exhibit N**.

16.     To date, Respondent has failed to fully comply with Subpoena A and has failed to comply with Subpoena B in its entirety.

17.     The documents requested pursuant to the Subpoenas A and B are relevant to a determination of the matters in question in the investigation described above in paragraph 3. The refusal of Respondent to produce the subpoenaed documents constitutes contumacious conduct within the meaning of Section 11(2) of the Act; has impeded and continues to impede the Board in determining the issues before it; and has prevented the Board from carrying out its duties and functions under the Act.

        **WHEREFORE**, the Applicant, the National Labor Relations Board, respectfully requests that:

        (a)     An order to show cause issue directing Respondent to appear before the Court personally or by counsel and show cause, if any there be, why an order should not issue directing it to appear before an agent of the Board, at the Applicant's Sub Regional office, at a date and time to be set by the Court; and to produce the subpoenaed documents relevant to the matters in question in the investigations described above in paragraph 3.

        (b)     Upon return of the order to show cause, the Court issue an order requiring Respondent to appear before an agent of the Board, at a date, time and place to be set by the Court; to produce subpoena documents relevant to the matters in question in the investigation before the Board.

        (c)     That the Applicant, National Labor Relations Board, be granted such other and further relief as may be necessary and appropriate.

Dated at San Juan, Puerto Rico, this 31th day of January, 2017.

By:   /s/ Celeste M. Hilerio-Echevarria
      Celeste M. Hilerio-Echevarria
      Bar No. G02301
      Attorney for Applicant
      National Labor Relations Board
      La Torre de Plaza, Suite 1002
      San Juan, P.R.  00918-1002
      Telephone:  (787) 766-5347/ 5292
      Facsimile:  (787) 766-5478
      E-mail: celeste.hilerio-echevarria@nlrb.gov

      /s/ Isis M. Ramos Meléndez
      Isis M. Ramos Meléndez
      Bar No. G00617
      Attorney for Applicant
      National Labor Relations Board
      La Torre de Plaza, Suite 1002
      San Juan, P.R. 00918-1002
      Telephone: (787) 766-5347/ 5585
      Facsimile: (787) 766-5478
      E-mail: isis.ramos-melendez@nlrb.gov